IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

DAVID LEE MILLER, Plaintiff

v.

CIVIL ACTION NO. 3:13CV52 CWR LRA

AMERICAN PUBLIC EDUCATION, INC.

dba

AMERICAN PUBLIC UNIVERSITY SYSTEM

and

CONSTANCE ST. GERMAIN-DRISCOLL,

Defendants

**JURY DEMANDED**

FILED JAN 23 2013

COMPLAINT

COMES NOW the plaintiff, DAVID LEE MILLER, appearing pro se, and for complaints against the defendants above named, states, alleges, and avers as follows:

JURISDICTION

1. This Court has subject matter jurisdiction under 28 U.S.C. sections 1331, 1332 and 1343.

2. This action is commenced pursuant to 2201 and 2202 and 42 U.S.C., section 1983.

GENERAL ALLEGATIONS

3. The plaintiff, DAVID LEE MILLER, is a citizen of the State of Mississippi, United States of America.

4. Defendant, AMERICAN PUBLIC EDUCATION, INC., is a provider of online higher education focused primarily on serving the military and public service communities. American Public University System (APUS), wholly owned by APEI, operates through American Military University (AMU) and American Public University (APU). APUS is accredited by The Higher Learning Commission and is ranked by U.S. News and World Report as 22nd out of more than 160 schools for Best Online Bachelor's Degree Programs. Defendant's Corporate and Administrative Offices are located in Charles Town, West Virginia. Defendant has more than 500 employees.

5. Defendant, CONSTANCE A. ST. GERMAIN-DRISCOLL, was, during the period in question, Director of the Criminal Justice and Legal Studies Programs for Defendant APUS, and is currently serving as the Dean of the School of Public Service and Health for Defendant APUS. Defendant is a resident of Virginia.

5. Plaintiff was employed from March 1, 2009 until December 31, 2011 as an Assistant Professor in the Legal Studies Program at Defendant APUS, supervised by Defendant ST. GERMAIN-DRISCOLL. From January 1, 2012 until the present Plaintiff has been employed by Defendant APUS as an Adjunct Instructor in the same program.

## CLAIM #1:

## A REQUEST FOR REASONABLE ACCOMMODATION UNDER THE AMERICANS WITH DISABILITIES ACT WAS UNLAWFULLY DENIED

6. On July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. section 12101, et seq., establishing the most important civil rights law for persons with disabilities in our country's history.

7. The Congressional statutory findings noted in 42 U.S.C. section 12101(a) include, among others:

> a. Some 43,000,000 Americans have one of more physical or mental disabilities.
>
> b. Historically, society has tended to isolate and segregate individuals with disabilities and despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;
>
> c. Discrimination against individuals with disabilities persists in such critical areas as employment;
>
> d. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, . . . exclusionary qualification standards and criteria, . . . and relegation to lesser services, programs, activities, benefits, jobs or other opportunities;

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

8. Congress went on to state explicitly in 42 U.S.C. section 12101(b) that the purposes of the Americans with Disabilities Act include:

a. To provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

b. To provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

c. To invoke the sweep of Congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

9. Congress gave commercial businesses one and a half years to implement the Act. The effective date was January 26, 1992.

10. On September 14, 2011 Plaintiff self-identified, via email, as having a disability, bi-polar disorder, and requested an accommodation under the ADA for the school term or session beginning December 5, 2011.

11. On September 16, 2011, Defendant ST. GERMAIN-DRISCOLL responded via email that the request would be granted. No request for documentation was made.

12. On or about November 30, 2011, Plaintiff was notified telephonically by Defendant ST. GERMAIN-DRISCOLL that his contract as a full-time Assistant Professor would not be renewed, although he would be offered employment as a part-time adjunct instructor. The request for accommodation was not mentioned in this conversation.

13. The accommodation requested for the school session beginning December 5, 2011 was not given. No notice was given of the change from the email of September 16, 2011, and no explanation was given for denying the request.

14. Defendant APUS and Defendant ST. GERMAIN-DRISCOLL, knowing of the plaintiff's disability, engaged in intentional discrimination and did so with malice and/or reckless indifference to the federally protected rights of the Plaintiff.

15. Plaintiff filed a Charge of Discrimination with the EEOC on May 30, 2012, EEOC Charge No. 423-2012-01396.

16. The EEOC issued a NOTICE OF SUIT RIGHTS on October 25, 2012, and this action is brought within the 90 day requirement.

## CLAIM #2:

### PLAINTIFF SUFFERED RETALIATION FOR MAKING A CLAIM FOR ACCOMMODATION

17. As noted in the above chronology, Plaintiff was effectively demoted soon after making the request for reasonable accommodation.

## CLAIM #3:

### PLAINTIFF SUFFERED RETALIATION FOR REFUSING A SETTLEMENT OFFER ON THE FIRST CLAIM

18. On January 16, 2012, Plaintiff had a telephone discussion with Pete Gibbons, SVP and Chief Administrative Officer for Defendant APUS.

19. During this discussion, Mr. Gibbons offered the equivalent of two months full-time pay to resolve the issues in Claim #1 above if Plaintiff agreed to leave employment by Defendant APUS.

20. Plaintiff declined this offer.

21. At the time of this conversation, Plaintiff had contracts, known as "task orders," to teach six (6) classes.

22. Shortly after this conversation, these task orders were cancelled or reassigned to other faculty for 3 of these classes, with no notice and without explanation.

23. Because these classes were taken away from Plaintiff with no notice, Plaintiff suffered significant financial hardship, having forgone other opportunities.

# CLAIM #4

## DEFENDANT ST. GERMAIN-DRISCOLL, IN HER CAPACITY AS PROGRAM DIRECTOR, VIOLATED PLAINTIFF'S ACADEMIC FREEDOM BY INTERFERRING WITH HIS TEACHING METHODS

24. According to the American Association of University Professors (AAUP), Academic Freedom is the indispensable quality of institutions of higher education.

25. In their 1940 *Statement of Principles on Academic Freedom and Tenure,* the AAUP writes that academic freedom in its teaching aspect is fundamental for the protection of the rights of the teacher and of the student.

26. The *Statement* further notes that teachers are entitled to freedom in the classroom in discussing their subject.

27. This *Statement* has been endorsed by more than 200 national scholarly and educational associations.

28. Defendant APUS subscribes to the principles of Academic Freedom.

29. In or around the Fall of 2010, Defendant ST. GERMAIN-DRISCOLL, without the Plaintiff's knowledge or consent, changed the content, testing, and grading of three sections of LSTD 301: Constitutional Law, substantially altering Plaintiff's presentation of the issues, material, and subject matter.

30. Defendant ST. GERMAIN-DRISCOLL threatened Plaintiff with disciplinary action, including termination, if he deviated from her content, testing, and grading. Those threats continued until the Program switched to a "Master Class" format in 2011.

31. These actions denied Plaintiff the freedom to teach as he thought fit and the students' freedom to learn.

# CLAIM #5

## DEFENDANT ST. GERMAIN-DRISCOLL, IN HER CAPACITY AS PROGRAM DIRECTOR, VIOLATED PLAINTIFF'S ACADEMIC FREEDOM BY INTERFERRING WITH HIS RESEARCH AND PUBLICATION

32. The AAUP notes in the 1940 *Statement* that teachers are entitled to full freedom in research and in the publication of the results.

33. In 2011 Defendant ST. GERMAIN-DRISCOLL assigned Plaintiff the task of revising the aforementioned Constitutional Law class.

34. Plaintiff made substantial revisions in the course, specifically in the areas of testing material and discussion topics.

35. Plaintiff contacted the publisher of the text used in the class to determine if there would be interest in including the Plaintiff's work in the Instructor's Manual. The publisher requested copies of the material for consideration.

36. When Plaintiff notified Defendant ST. GERMAIN-DRISCOLL of this she ordered him, directly and/or indirectly, not to submit the material.

37. Publication is essential to academic advancement.

38. By denying the Plaintiff the ability to publish the results of his research, Plaintiff was denied promotional opportunities within Defendant APUS and in other institutions.

CLAIM #6

DEFENDANT ST. GERMAIN-DRISCOLL, IN HER CAPACITY AS PROGRAM DIRECTOR, DISCLOSED TO PERSONS WITHOUT A NEED TO KNOW INFORMATION PROTECTED BY PRIVACY LAWS AND UNIVERSITY POLICIES

39. In 2011 and 2012, in her capacity as Program Director, Defendant ST. GERMAIN-DRISCOLL had access to private and/or confidential information regarding Plaintiff's employment with Defendant APUS.

40. Defendant ST. GERMAIN-DRISCOLL disclosed this information to others not entitled through qualified privilege.

41. The disclosure of this private and/or confidential information placed Plaintiff in a false light.

42. These disclosures significantly harmed Plaintiff's reputation and standing within the Program.

## CLAIM #7

### DEFENDANT ST. GERMAIN-DRISCOLL, IN HER CAPACITY AS PROGRAM DIRECTOR, MADE DEFAMATORY STATEMENTS ABOUT THE PLAINTIFF

43. In 2011 and 2012, Defendant ST. GERMAIN-DRISCOLL made numerous slanderous and libelous statements to others within Defendant APUS. These statements were, unprivileged, false, and injurious to the reputation of the Plaintiff amongst friends and co-workers.

44. Plaintiff admits that his knowledge of these statements is based on hearsay, but avers that the statements may be proven through reasonable examination of Defendant's email and depositions of various persons.

## CLAIM #8

### DEFENDANT ST. GERMAIN-DRISCOLL, IN HER PRIVATE CAPACITY, UNRELATED TO HER POSITION AS PROGRAM DIRECTOR, MADE DEFAMATORY STATEMENTS ABOUT THE PLAINTIFF

45. In 2011 and 2012, Defendant ST. GERMAIN-DRISCOLL made numerous slanderous and libelous statements to others that were not made in her capacity as Program Director. These statements were, unprivileged, false, and injurious to the reputation of the Plaintiff amongst friends and family.

46. Plaintiff admits that his knowledge of these statements is based on hearsay, but avers that the statements may be proven through reasonable examination of Defendant's email and depositions of various persons.

## CLAIM #9

### DEFENDANT ST. GERMAIN-DRISCOLL, IN HER CAPACITY AS PROGRAM DIRECTOR, AND DEFENDANT APUS, THROUGH VARIOUS OTHER AGENTS AND REPRESENTATIVES, BREACHED THE EMPLOYMENT CONTRACT(S) WITH PLAINTIFF.

47. The allegations made in Claims #1-8 above constitute breach or constructive breach of the various employment contracts made with Plaintiff.

WHEREFORE, the Plaintiff, DAVID LEE MILLER, prays that the Court issue an injunction enjoining the defendant from continuing its discrimination and that the Court award Plaintiff such additional compensatory and punitive damages or alternative relief as may be just, proper, and equitable, including costs and attorneys' fees. Plaintiff notes for jurisdictional purposes that the statutory compensatory and punitive damages possible for claims #1-3 alone exceed the $75,000 threshold.

Respectfully submitted,

DAVID LEE MILLER
6295 Old Canton Road, #40-A
Jackson, MS 39211
937-232-7786
DavidLeeMillerEsq@gmail.com

Dated: January 23, 2013